**AFFIDAVIT OF HOMELAND SECURITY INVESTIGATIONS SPECIAL AGENT
<u>DANIEL CIANCIOLO</u>**

I, Daniel Cianciolo, declare and state as follows:

I. **<u>INTRODUCTION</u>**

1.      I have been a Special Agent with Homeland Security Investigations ("HSI") since October 2020.  I have over 13 years of experience as a federal law enforcement officer.  Prior to joining HSI, I was a deputy U.S. Marshal.  I have been assigned to the Organized Crime Drug Enforcement Task Force ("OCDETF") Strike Force since May 2023, where my duties include investigating drug crimes and criminal drug enterprises.  Previously, I was assigned to the Document and Benefit Fraud Task Force ("DBFTF") where my duties included conducting investigations involving the fraudulent acquisition, production, and misuse of U.S. immigration documents, U.S. passports, identity documents, fraudulent loan applications, and fraudulent government benefit acquisitions.  In conjunction with my position as a Special Agent with HSI, I completed training in conducting criminal investigations at the Federal Law Enforcement Training Center in Brunswick, Georgia.  As a result of my training, experience, and conversations with other law enforcement officers, I am familiar with the methods, routines, and practices of document counterfeiters, vendors, and persons who fraudulently obtain or assume false identities in order to obtain government benefits.  My investigations have included the use of surveillance techniques and the execution of search, seizure, and arrest warrants.

II. **<u>PURPOSE OF AFFIDAVIT</u>**

2.      I submit this affidavit in support of a criminal complaint charging Katherine Reynolds ("REYNOLDS"), date of birth March 2, 1959, with wire fraud (18 U.S.C. § 1343).  The facts stated herein are based on my own personal involvement with this investigation as well as from information provided to me by other law enforcement officers involved in the

investigation.  Because this affidavit is submitted for the limited purpose of securing a criminal

complaint, I have not included every fact known to me concerning this investigation.  Instead, I

have set forth only the facts that I believe are necessary to establish the necessary foundation for

the requested complaint.

## III.    PROBABLE CAUSE

### A.    *The Paycheck Protection Program*

3.    The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal

law enacted in or around March 2020 and designed to provide emergency financial assistance to

the millions of Americans who were suffering the economic effects caused by the COVID-19

pandemic.  One source of relief provided by the CARES Act was the authorization of up to $349

billion in forgivable loans to small businesses for job retention and certain other expenses,

through the Paycheck Protection Program ("PPP").  In or around April 2020, Congress

authorized over $300 billion in additional PPP funding.

4.    To obtain a PPP loan, a qualifying business must submit a PPP loan application,

signed by an authorized representative of the business.  The PPP loan application requires the

business (through its authorized representative) to acknowledge the program rules and make

certain affirmative certifications to be eligible to obtain the PPP loan.  In the PPP loan

application, the small business (through its authorized representative) must state, among other

things, its average monthly payroll expenses and number of employees.  These figures are used

to calculate the amount of money the small business is eligible to receive under the PPP.

5.    A PPP loan application must be processed by a participating lender.  Data from

the application, including information about the borrower, the total amount of the loan, and the

listed number of employees, is transmitted by the lender to the Small Business Administration

("SBA") in the course of processing the loan.  If a PPP loan application is approved, the

participating lender funds the PPP loan using its own monies, which are 100% guaranteed by the

SBA.  The SBA is a United States government agency based in Washington, D.C.

6.      PPP loan proceeds must be used by the business on certain permissible expenses,

e.g., payroll costs, interest on mortgages, rent, and utilities.  In some instances, the PPP allows

the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan

proceeds on these expense items within a designated period of time after receiving the proceeds

and uses a certain amount of the PPP loan proceeds on payroll expenses.

7.      Beginning in or around January 2021, a "Second Draw" PPP was offered, which

allowed eligible borrowers who had previously received a PPP loan to apply for a "Second

Draw" PPP loan with the same general loan terms as their first PPP loan.  Funds from Second

Draw PPP loans could be used to fund payroll costs, mortgage interest, rent, utilities, uninsured

property damage costs relating to looting or vandalism, as well as worker protection costs related

to COVID-19.

8.      The PPP loan program ended on May 31, 2021.

**B.**      ***Fraudulent Submission of PPP Loan for Katherine Reynolds***

9.      On or about May 20, 2021, REYNOLDS submitted a final, electronically signed

and submitted PPP loan application to American Lending Center ("ALC") for a PPP loan in the

amount of $20,833.33.  REYNOLDS submitted the application on behalf of a business called

"Katherine F. Reynolds."  REYNOLDS claimed her business was established on February 9, 2018,

and had a gross income in 2019 of $106,000.

10. REYNOLDS identified herself as the 100% owner of the business, as well as its sole employee.[1]

11. REYNOLDS provided her residential address for the "Business Address,"[2] her Social Security number ending 3545 as the business owner's Social Security number, and her cell phone number ending 9583 as the "Business Phone."[3]

12. REYNOLDS indicated that the purposes of the loan were to pay for "Payroll Costs," "Rent/Mortgage Interest," and "Utilities."

13. In the application, REYNOLDS requested that the loan funds be deposited to an account with number ending 8597. This is actually a Magnetic Ink Character Recognition ("MICR") line that is associated with Merrimack Valley Credit Union ("MVCU") account ending 0813. The number ending 8597 is the MICR line that needed to be used for ACH transactions, like the transfer of the PPP loan funds here.

14. MVCU account number ending 0813 has three account holders: the primary account holder is Albert D. Frasier ("Frasier") and the two joint account holders are his daughters REYNOLDS and Ann Stark ("Stark").

---

[1] Specifically, REYNOLDS indicated that the "number of employees (including owners)" was one.

[2] REYNOLDS lived at this residence with her elderly father Albert Frasier.

[3] In the application, REYNOLDS listed the same number—(339) 832-9583—as her personal phone number. REYNOLDS' sister confirmed that this number was Reynolds' personal cell phone number.

15.     As required by ALC, in connection with her PPP loan application, REYNOLDS provided a photograph of herself holding her Massachusetts driver's license[4] and a white piece of paper on which was handwritten, "for ALC verification 05/05/21."

16.     REYNOLDS also provided a copy of a 2019 Schedule C tax form in connection with the PPP loan application.  In the submitted Schedule C, REYNOLDS indicated that her business was a "massage parlour" that had $106,000 in gross income.  She further indicated that the business had $9,500 in total expenses, comprising $6,000 of car and truck expenses, $2,000 of supplies expenses, and $1,000 of "other" expenses.[5]  REYNOLDS' Schedule C stated that her business made a net profit of $97,000 in 2019.[6]

17.     On or about June 17, 2021, after having approved the PPP loan application, ALC wired $20,833.33 to MVCU account ending 0813.  During the relevant time period, ALC's servers were located in California and the MVCU server that processed this transaction was located in Maine.  Therefore, the wire was transmitted through interstate commerce.

**C.     _Fraudulent Submission of PPP Loan for Albert Frasier_**

18.     Also, on or about May 20, 2021, REYNOLDS submitted a second electronically signed and submitted application to ALC for a PPP loan in the amount of $20,833.33 in the name of

---

[4] The photograph provided in the loan application matches the photograph of REYNOLDS in the Massachusetts Registry of Motor Vehicles database.

[5] These enumerated expenses add up to $9,000, though the claimed total for expenses was $9,500.

[6] This reflects the amount left after the enumerated expense amount of $9,000—rather than the indicated total expense amount of $9,500—was subtracted from the claimed gross income of $106,000.

Albert Frasier, REYNOLDS' father.[7]  This application and its supporting documentation was nearly identical to the application REYNOLDS submitted in her own name.

19.     REYNOLDS submitted the application on behalf of a business called "Albert D. Frasier," which she indicated was established on February 5, 2018, and had a gross income in 2019 of $106,000.

20.     REYNOLDS identified Albert D. Frasier as the 100% owner of the business, as well as its sole employee.[8]

21.     REYNOLDS provided her residential address for the "Business Address," her father Frasier's Social Security number ending 3664 as the business owner's Social Security number, and REYNOLDS' phone number ending 9583 as the "Business Phone."[9]

22.     REYNOLDS indicated that the purposes of the loan were to pay for "Payroll Costs," "Rent/Mortgage Interest," and "Utilities."

23.     At the time of the application, REYNOLDS' father was 86 years old.  He has subsequently passed away.

24.     In the application, REYNOLDS requested that the loan funds be deposited to an account with number ending 8597.  As noted above, this is actually a MICR line that is associated with MVCU account ending 0813 that needed to be used for ACH transactions, like the transfer of the PPP loan funds here.

---

[7] The loan application was signed by "Alert D. Frasier," which appears to be a typographical error in the spelling of REYNOLDS' father's name, Albert.

[8] Specifically, REYNOLDS indicated that the "number of employees (including owners)" was one.

[9] In the application, REYNOLDS listed the same number—(339) 832-9583—as the personal and business phone number.  REYNOLDS' sister confirmed that this number was REYNOLDS' personal cell phone number.

25.     As noted above, Frasier was the primary account holder for MVCU account ending 0813 and REYNOLDS was a joint account holder on the account.

26.     As required by ALC, in connection with her PPP loan application, REYNOLDS provided a photograph of her father Frasier[10] holding his Massachusetts driver's license and a white piece of paper on which was handwritten, "for ALC verification 05/05/21."

27.     REYNOLDS also provided a copy of a 2019 Schedule C tax form in connection with the PPP loan application she submitted in the name of Albert Frasier. In the submitted Schedule C, REYNOLDS indicated that the business was a "massage parlour" that had $106,000 in gross income. She further indicated that the business had $9,500 in total expenses, comprising of $6,000 in car and truck expenses, $2,000 in supplies expenses, and $1,000 in "other" expenses.[11] This left the business with $97,000 in net profit.[12]

28.     On or about June 17, 2021, after having approved the PPP loan application, ALC wired $20,833.33 to MVCU account ending 0813. During the relevant time period, ALC's servers were located in California and the MVCU server that processed this transaction was located in Maine. Therefore, the wire was transmitted through interstate commerce.

---

[10] Local law enforcement who met personally with Frasier confirmed that he was the person in the photograph.

[11] These enumerated expenses add up to $9,000, though the claimed total for expenses was $9,500. This is the same mathematical error reflected in REYNOLDS' personal PPP loan application described above.

[12] This reflects the amount left after the enumerated expense amount of $9,000—rather than the indicated total expense amount of $9,500—was subtracted from the claimed gross income of $106,000.

### D. *Subsequent Investigation and Events*

29.     On June 16, 2021, before the wire transfers of the PPP loan funds, the MVCU account ending 0813 had a balance of $698.45.  After both transfers on June 17, the account's balance was $42,365.11.

30.     These funds were depleted rapidly.  On June 21, 2021, REYNOLDS transferred $5,000 by wire to JPMorgan Chase.  On June 22, 2021, $10,000 in cash was withdrawn.  On June 25, 2021, $20,000 in cash was withdrawn.  On July 2, 2021, another $4,000 in cash was withdrawn.  By August 5, 2021, the account's balance was $0.00.

31.     REYNOLDS' sister, Stark, noticed the activity in the MVCU joint account ending 0813.  On February 22, 2022, Stark questioned REYNOLDS via text message about taking out a loan in Frasier's name.  REYNOLDS claimed that someone whom she referred to as "J" admitted to taking the money, had been arrested, and that "[t]he FBI is going to see him today at jail." REYNOLDS indicated "J" admitted to opening accounts and loans to pay his son's hospital bills. She indicated "J" stole a lot of money from people by getting loans from the government.

32.     On February 24, 2022, Stark contacted the Plymouth Police Department and stated that her father was retired, had been for some time, and would have no need for PPP loans.

33.     On March 3, 2022, Stark spoke with the Plymouth Police Department for a second time.  Stark stated that neither REYNOLDS nor their father owned any business.

34.     On June 30, 2022, the Plymouth Police Department interviewed Frasier.  Frasier stated that he had never owned a massage parlor and was not aware that REYNOLDS ever had either.  Frasier stated that if any tax return had been filed in his or REYNOLDS' name stating that they separately owned a massage parlor and made $106,000 in gross income in 2019, that would be false, and he would not know why anything like that would have been filed.

35.     The Massachusetts Department of Revenue certified that upon a diligent search of its records, no individual named Albert Frasier, with Social Security number ending 3664, had filed any personal income tax return with the Department of Revenue for the year 2019.

36.     Likewise, the Internal Revenue Service certified that that upon a diligent search of its records, no individual named Albert Frasier, with Social Security number ending 3664, had filed any personal income tax return with the Internal Revenue Service for the years 2019-2021.

37.     The Massachusetts Department of Revenue also certified that upon a diligent search of its records, no individual named Katherine Reynolds, with Social Security number ending 3545, had filed any personal income tax return with the Department of Revenue for the year 2019.

38.     Likewise, the Internal Revenue Service certified that upon a diligent search of its records, no individual named Katherine Reynolds, with Social Security number ending 3545, had filed any personal income tax return for the years 2019-2020.

## IV.     CONCLUSION

39.     Based on the foregoing, and my training and experience, I have probable cause to believe that REYNOLDS knowingly and with the intent to defraud, executed a scheme to obtain money, funds, and property from the SBA through ALC and MVCU by means of materially false and fraudulent representations, pretenses, and promises, namely, REYNOLDS submitted applications for a PPP loans on behalf of herself and her father, Albert Frasier, that contained false representations about the existence of a business that generated revenue of over $100,000, in violation of 18 U.S.C. § 1343.

Sworn to under the pains and penalties of perjury

/s/ Daniel Cianciolo

_____

Daniel Cianciolo
Special Agent
Homeland Security Investigations

Subscribed and sworn before me on April 26, 2024

Honorable M. Page Kelley
United States Magistrate Judge